24-23-85 It looks like there's a little bit of commotion. We'll give folks a little bit of time to settle, but you're welcome to come up whenever you're ready. Get yourself set too. We've got a standing room only crowd for this. All right. Good morning, your honors. May it please the court, Jed Rubenfeld for the plaintiff's appellants in this case. I want to thank you, first of all, your honors, for getting this case, this emergency motion so quickly onto the calendar. I remember very well what a burden that can be to chambers and I appreciate it. Because of the shortness of time, I'm going to just jump straight to the merits of the case. What I'd like to emphasize is plaintiffs are not asking this court to break a single inch of new legal ground. We are only asking this court to follow the Supreme Court's decision in Anderson v. Calabresi. Your honors, we would submit this case is virtually indistinguishable. In Anderson, as your honors know, Ohio had blocked an independent presidential candidate, John Anderson, from the ballot on the grounds that he had missed a filing deadline, which he had by two months. The Supreme Court would have none of it and said despite the state's interests in filing deadlines, they had to yield because it's a presidential election to the constitutional and federal interests at stake, especially the right of voters, the right of voters, because this case is fundamentally about voters, not the candidate, to have the candidate of their choice placed on the ballot. I'm sorry. I'm wondering whether the way you just recited it sounds like a broader proposition, which is that the right of the voters to vote for a candidate of their choice overrides any filing deadline that the state might set. Wasn't one of the elements of the analysis in Anderson the level of reasonableness of that filing deadline relative to the election? And isn't that sort of the kind of analysis the court conducted here as it relates to the resident's disclosure requirement? Yes, your honor, of course. So to be clear, there are two standards of review, as this court has held very clearly in the Sand Party case and in Price before it, to be applied in these kinds of cases. Number one, if the burden on the candidate or the voters is severe, strict scrutiny applies. We have argued, and I'm happy to make the case for it, that this is a severe burden. But even if it's the more deferential Anderson balancing test, it is not rational basis review this court held in Price. Judges, courts cannot hypothesize new state interests. They must look at the actual state interests put forward by the state and measure the extent to which the regulation in question actually advances those state interests. So what you just described, and one of the things I'm struggling with a little bit, is there's this distinction that you've talked about in your briefs between a facial challenge and an as-applied challenge. And you framed this as an as-applied challenge. So I take it you're not asking us to rule that the requirement of disclosing your residence in your registration paperwork is facially unconstitutional. There's lots of different things that they get thrown around as to why in this case you argue it is. And I want to be more precise as to what the factors are. Is it your position that in any presidential race, because there's not a need for it, that it's unconstitutional to require it? Or is there something more specific to this case that supports the as-applied nature of your argument? Got it, okay, and I am about to reply. You know, I didn't ask your Honor's permission to reserve a minute or two for rebuttal. If I may, I don't know if you do that on a motion. We don't typically do that on a motion, so give us a best shot now. I'll do my best. Yes, so first, with respect to every presidential, independent presidential candidate, the residence requirement is a mismatch. With respect to every state and local office and even United States Congress people, senators and representatives, there can be and New York has in-state residency requirements. So of course the nominating petition has to have an address. It fulfills the legitimate state interest in checking qualifications to see if his address, you know, if he satisfies whatever in-state residency requirement applies. If you're running for town select, then you've got to be a resident of that town. If you're running for governor, you've got to be a resident somewhere in New York. That does not apply to any presidential candidate. New York cannot and does not purport to have a residency requirement of any kind, and no state could for an independent presidential candidate. So that leads to the conclusion that this requirement does not apply in presidential. It's unconstitutional to apply it, period, to presidential candidates. Well, I do think there's a case to be made for that proposition, but I want to go further and explain why, as applied in this particular case, it even more fails to satisfy the state interests and why it's particularly burdensome to Mr. Kennedy. So here's the thing. If a candidate does not have a permanent home. But that's not the case of Mr. Kennedy. Well, is it not? I mean, he has this residence in California, and he has what he claimed to be a residence in New York. The New York courts find that that residence in New York is not a permanent fixed home. But his residence in California, he has said under oath, I do not intend to return there permanently. I intend to return to New York. Under domicile law in New York says that its residence requirement tracks domicile. It's not clear that his California residence would satisfy either. It's actually very confusing to me, because the whole concept of domicile, as it applies in conflict of laws, is you only have one at any given time. And yet, New York says, on the one hand, this is really tracking domicile. On the other hand, it says, you could have two residences, and you can pick whichever one. You're putting your finger on it now. I think we can make sense of that if I have a city residence in New York and a country residence in New York, and I go there three months out of the year, and I actually intend to return to both, then I could have maybe two residences in New York. But still, you'd have one in domicile. One in domicile. In the choice of law sense or the state citizenship case for diversity, you are a citizen of New York in both cases. But what if your summer place is on Nantucket? Absolutely. And I am suggesting that Mr. Kennedy's situation, I do want to emphasize, this case is about rights of voters. But what the court found, though, is that he basically lied. That he made a false statement about his residence in New York because it isn't a residence at all. And I'm wondering how that plays into this. In other words, it would be one thing if what you're saying is it's unconstitutional for New York to require an independent presidential candidate to state his residence at all. But is that what you're saying? Or is this something that is more specific? And it relates to, for example, how do we decide what's a severe burden? The state says it's no big deal to put down your residence. That's not a severe burden. Are you saying that because the consequence of giving a false residence is that you're banned from the ballot, that that's the severe burden? So it's only that someone who falsely testifies or states his residence is affected by this. But there's still no state justification for it. And what? And it is a severe burden because now you're off the ballot? Is that the way you look at this? I'm going to try to answer your questions in order. Number one, the third department, the operative decision now, did not find that he lied. In no way did it rest its decision, excluding him from the ballot, on any claim or finding that there was any prevarication in the case. If the lower court found that there was prevarication, and I think you could argue about that, the third department did not do so. And this court has been very clear in the Price case, 2008, you do not. Well, whether it's intentionally false, isn't the whole premise of this that it is false? Yes. So I got so much to say. I want to say two different points about it. Number one, imagine, so major party candidates have to disclose their address, too. Okay? So let's say that a court found that Vice President Harris's residence on her nominating petition or former President Trump's address was not their real address. Suppose in their nominating petition that they just submitted, suppose the court said, you know what, Trump's address, he put down Florida, he really lives in New York, or vice versa. He put down New York, he really lives in Florida. We're cutting him from the ballot. Would any court in the country permit New York to do that? Even if there was some plausible basis to say that on domicile basis they were right, you would never allow it, and you should not allow it here. Second, the thing about Mr. Kennedy's position is he's argued, I think very plausibly, he's got two residences, neither of which might satisfy. And as a result, if he puts down either one, a court could find later that it wasn't the right one. And then he can't correct. That's the structure of New York law. So if they allowed him to correct, it would be all right. But they don't allow him to correct because the time a court rules, the nominating petition window is over, and he can't correct. And if you exclude all independent presidential candidates from the ballot, as the court held in Anderson versus Calabresi, that's a heavy burden. It would be all presidential candidates for whom there was sufficient ambiguity as to their residence that they would be in a bind as to what to put. You're absolutely right. What I meant is, as applied in this case, it looks like New York's the only state in the country that's only going to have two candidates on its presidential ballot. I was making the independent point that here, as applied- Isn't there still some litigation underway about that? What's that? Isn't there still litigation underway in other states about who's going to be on the ballot? Yes, there is, and I'm only speaking on information and belief here. But we believe that New York's going to be the only state in the country with only two major party candidates on its ballot. I want to make one more response to Judge Lynch's question, which is New York courts have held that if there's an intent to deceive in putting down the residence, that can be basis of invalidation. But the New York courts have said over and over, it must be an intent to deceive with respect to the identity of the candidate. And that's the Maloney case. I urge your honors to read that. I'm not going to urge you to read anything, but we cite it. We quote it. If there is an intent to deceive with respect to the identity of the candidate, then you can validate. But if there isn't, and the courts have been, where a candidate's address is erroneously stated on the designated petition, but there is no showing of an intent by the candidate to mislead or confuse signatories as to his or her identity, nor showing that the error would or did tend to mislead, the designating petition should not be invalidated. New York does not have a strict compliance rule. New York does not have a rule that says if there's an error. If there's an error with intent to mislead with respect to identity, which, and there's no claim of that here. Now, you're going to hear opposing counsel say that Maloney case was a case of inadvertent error. There's the third department. That's the third department in Maloney, too. There's no holding there it was inadvertent. We don't know why he put down the wrong residence. We do know why. We do know the court said if there's no intent to mislead with respect to identity, it should not be invalidated. Suddenly, they create a new rule here for the first time. They apply it to Kennedy. You cannot, that's not even handed and that alone should trigger heightened scrutiny under Anderson verdict framework. If you don't apply even handed. Just a couple of related questions for clarification. The highest court of the state of New York has made a decision in this case, right? The court of appeals declined to hear. Declined to hear. Yes, your honor. We're final in the state of New York. Yes, your honor. Your request here is for relief from the district court and the circuit court to overturn that ruling effectively. To say, New York state courts say he's off the ballot. Federal courts, please put him back on. You're right. That's right, your honor. And you have not sought relief from the Supreme Court in response to the New York court of appeals. I do not know what, I am not counsel in the New York proceedings. I do not know what decisions will be made. I am aware that no writ of certiorari has been petitioned for yet. But I don't know what will happen. Well, one might think that if one were going to be made, it would have been made by now. Because the logical thing to do is exactly what you've done, which is to make an emergency motion for emergency relief. On the other hand, I thought the response that you made in the papers was putting aside team Kennedy. I don't know if you represent team Kennedy. No, sir. You represent the voters, right? Correct. And those parties are not in privity with Mr. Kennedy. Maybe Mr. Kennedy no longer cares, having withdrawn from the race, whether he's on the ballot. Maybe his, that's why they're not going to the Supreme Court. But you are different parties than, you have no right to appeal, I gather, the decision in New York state courts because you weren't parties there. Yes, sir, that's right. We are not parties. We're not in privity. The voters, the over 100,000 voters who signed that petition have their own rights. They have their own right to come to a court of their decision, of their choice, not go to state court, come to federal court. They have a right to vindicate their own claims. Whether team Kennedy or Mr. Kennedy will be appealing to the Supreme Court, I can't be sure. But I know that my clients have a right to have their claims heard in this court. And this case is not even about, as it stands before your honors right now, it's not about Mr. Kennedy anymore. It's about these voters. But I will say, I will say, Ross Perot, who withdraws, who suspends his campaign in July of 92, I think it was. He continues to be put on the ballot after that. Suspends, quits the campaign. Comes back in in October and then gets 19% of the vote in November. This is a volatile, we've had another assassination attempt. I mean, you don't know what could happen. And it could be extremely important to the country that Mr. Kennedy is put back in the ballot. But this case, this motion is about the rights of voters. Thank you. Are there no further questions from my colleagues? Appreciate your audience. Thank you, your honors. Thank you, your honors. May it please the court. Andrea Trento from the Office of the Attorney General for the appellee's respondents. Today is September 17th. Last week, state and county boards of elections certified candidates that it would appear on thousands of different ballot styles to be used at this year's election. By this Friday, September 20th, three days from now, tens of thousands of ballots will be mailed overseas to military and overseas voters who have already requested them. These ballots are being printed, tested, and translated, and in some counties, transmitted electronically to voters who have requested them in that manner. It is possible that mailings have even started at this point. We are past the 11th hour for changes to the ballot. Any relief now would be extraordinarily disruptive and would jeopardize compliance with federal laws regarding mailings to overseas military voters, which would also harm these voters by giving them less time to cast a ballot. I hear you on the, I mean, all of those points. I think you've made clear in your papers as well. I'd love to sort of shift a little bit to kind of the merits. Yes, your honor. Question, and one of the points that your colleague raised is this was not framed as a fraud. This was framed as an inaccurate statement of the residents, or is it your view that this was a fraud? I don't think it's particularly clear from the trial court opinion whether the court found there was an intent to mislead on the candidate's part. But the court did find that the inclusion of the address, the insertion of the particular address that was used on the petition forms was deliberate. And that intentionality puts this case in a different bucket than the inadvertent cases, than the Maloney case. Let me ask you this, though. What's the hook under New York law? Like, if you don't get enough signatures and they get disqualified, you get off the ballot. What's the hook for taking someone off the ballot? I understand in every race other than a president, if they get it wrong, it may be because they don't actually qualify to run in the district they're running in. But what's the statutory hook for removing someone from the ballot in a presidential race for misstating the residents in that form? Well, the statutory hook is that voters, anyone has a right to petition, a right to file an objection to a petition that's filed on the basis of, in this case, the fact that the residency did not reflect the accurate residency of the candidate. Well, that gives them the right to file. But what's the statutory hook for the remedy for that error being removing from the ballot? Well, Your Honor, there is a statutory obligation to provide a residency on the petition form. And then the courts have interpreted that. Courts of New York have interpreted that obligation to require strict compliance in circumstances where there is intentionality to that. And so that's the hook that I believe Your Honor is looking for. And that furthers the state's interest, even as to presidential candidates. So just to be clear by what you mean by intentionality, if someone inadvertently entered by typing something wrong, his address says 4455 whatever street, when it was actually just 455. And so this was a slip of the finger. That would be unintentional. But here there's no question that this was a decision that was made to use this address. But it's still, that's still different from an intent to mislead. If the, I'm not sure what, is there a difference then between like a mistake of fact where you inadvertently put something down and a mistake of law with respect to what residents can count? Well, I think, Your Honor, it goes to the purpose of the requirement. And the purpose of the requirement is to ensure the, you know, it's a check on the identities of the candidates who are running for office. Not just the qualification for a particular office for which a residency requirement is there, but also in the case of the presidential candidates, if Joe Smith is running for president and Joe Smith sends a bunch of petitions around, one way to ensure that a particular Joe Smith is circulating petitions is that it's the Joe Smith who has listed this particular residency. And once you get into the world where there's intentionality with regard to a particular residency that's put that does not meet the requirements of New York law, whatever the motive, whatever the purpose for that, it starts to call into question who this candidate is putting himself forward as. And so in that sense it is related to the purpose of the New York statute in ensuring that when a residency is included on a petition form, it reflects a particular identity of a candidate. So all these people who signed the petitions thought they were voting for the Robert Kennedy who bunks out in somebody's back room in Katona. They didn't think they were signing for the Robert F. Kennedy who's married to the actress and lives in California and was an environmental activist turned anti-vaxxer. I think I understand where Your Honor is getting at. And the point is, my response to that, Your Honor, is that once you get into this intentionality point, once you get into an address that's deliberately included that does not meet New York's requirements, New York has the right to then ask for strict compliance with that requirement, whoever the candidate is. Now my opposing counsel said, well, no one would ever take Donald Trump or Kamala Harris off the ballot if they were to engage in some similar, yeah, I don't want to put a loaded term, but some similar effort to put a residence that doesn't meet the state requirement. We don't know that, Your Honors, because we've never seen that happen. I think it's a testament to the fact that it's not hard to comply with this requirement. There have been instances where candidates have deliberately put incorrect addresses on their forms and they were excluded from the ballot, even where the address had nothing to do with their qualification for office. And so this case, what the state court did here, is simply an extension, a continued extension of what courts always do in New York in these kinds of circumstances. If I could turn to some of the points that my opponents made with regard to whether- Can I ask, sorry, just before you, and this may even be one of the points you make, but I was interested in the, I think in this day and age, the idea that anybody who's putting themselves out there has to put their home address on a form. It feels shocking to me. I'm just wondering whether there's a mechanism if they ask, and I understand that didn't happen here, but if they ask, is there a mechanism for redaction or something? Your Honor, I confess I don't know the answer to that question. I can follow up with my clients and check the law, frankly. I just don't know. Okay. Sorry. But Your Honor's right that it is an issue here and wasn't asked for and wasn't raised in any of the points below. Oh, I mean, if you were making a facial challenge, I suppose it might go to the burden, but if you're making an as-applied challenge and you haven't raised that- That's correct, Your Honor. The issue of that the candidate here may not have any residence that meets New York's requirement can't possibly be the case because if that were so, any resident of New York who intends to retire to Florida, swears an oath that they will retire to Florida, or intends to go live with their kids and their grandkids in some other state, would be subject to the same issue. What I no longer know, I don't permanently intend- Your domicile is affected by the last place that you lived when you intended that to be your permanent home. So if you're a New Yorker and you wind up playing in the NBA and play in Minnesota and play in a whole bunch of other places, and you actually live there and you don't have any house in New York, for most purposes, your domicile remains New York. So the fact that you intend to go to Florida someday, if you still live in New York, and you have not gone to Florida and established a residence there, you don't have domicile. That's what's so confusing about this statute. Because on the one hand, the state says residence here means the same thing as domicile. On the other hand, it says if you have two different residences, you can pick one. That's not true of domicile. It also requires you to be domiciled at a particular address, which is not how the concept of domicile usually works. I can be a New York domiciliary, a citizen of the state of New York for diversity purposes, if I haven't lived in New York for ten years because I've never established a new permanent home. But that person who's in that situation does not have a New York address. So they don't have a residence that they can pick. So I think this is a more difficult thing to comply with, at least hypothetically. Now, how this applies to Mr. Kennedy in an as-applied challenge may be a different question. But it's a very peculiar set of things to say, that you have to be domiciled at a particular address. And I'm just not sure what to make of that. Well, I think I can help, Your Honor. I hope I can help, Your Honor. In this case, we have a candidate who lives in California, intends one day to return to New York, but does not, according to the state court, does not have a fixed permanent place in New York to which to return. In that case, it is no different, I would submit, than the situation where someone intends to move with their grandkids. Maybe it's just that the domiciliary thing is a misnomer. The statute doesn't say domicile, right? The statute says residence. It says residence. And that's something different. And maybe it's just the courts that have thrown in this domicile notion. Because it seems to me perfectly plausible to say that Mr. Kennedy's permanent residence, even if he intends to move at some future point, is the California address. That's where he's been for quite a while. There's all sorts of evidence cited in the district court opinion, I guess, picking up on things that happened in the New York litigation. That California is where he actually lives now. And that, more specifically, he flatly does not live and did not live during the petitioning period at this place in New York that he listed as the address. Those seem to me to be- Among the finest facts. Yes. Oh, sorry. No, I'm sorry.  Was that- That was not a question, sorry. So the question that raises, though, is I think you're- I clearly take your point that New York doesn't fit the definition of residence in the statute. I take his argument to be, neither does California. Because while I'm temporarily located there, and it may be a long, temporary period, I always intended to return to New York. And as a consequence, I don't have a residence under the New York statute. What am I to do? What's the answer to that? I don't know what the California statute says, and I don't know that it's been put before this court as to whether Mr. Kennedy is a resident of California under the California statute. I would- Does it matter? I mean, we're- Well, he's not a resident under the New York statute, and so I can't speak to where he may otherwise be a resident under- Well, the question is, where is he a resident per the New York statute? Well, per the New York statute, he does not have a fixed permanent principal residence in New York, and therefore- Which creates- He cannot be a New York resident. Well, that creates the problem that Mr. Rubenfeld says. Mr. Kennedy may have a fair amount of financial resources, but he is essentially a homeless person for purposes of this statute. And therefore, he cannot be a candidate because there's no place he could put down that would be accurate. I see. Your Honor, I would submit that there is a place under New York law he could put down. That's the place where he does have a fixed permanent and principal location to live, and that would be California. Even if he testifies that he doesn't always intend to return there? If that provision of the statute were interpreted in the way that you're asking or suggesting, it would mean that anyone with some uncoet but firm belief-view decision that one day they want to go somewhere else would be excluded from a definition of a residence. And that, Your Honors, it can't be the case. It would be one thing if Mr. Kennedy did have a permanent fixed place in New York that he could point to in addition to his California residence, where under New York law you can theoretically have two potential places you could point to and select one of them. But the state court in Cartwright found that that wasn't the case. And so Mr. Kennedy has, as I understand the facts, again, I don't know that there were other residences that were identified. I believe Massachusetts was discussed as well. But according to Mr. Kennedy's own testimony, he lives currently in California, and that would appear to meet the definition of the New York statute. Okay. Appreciate your argument so much. I'm sorry, I do. I would like to take you back to where you started. Sure. Which is where are we in the cycle, and why does that matter, and how does it matter? Is there, what could they have done to get this to us faster? Well, Mr. Kennedy himself could have, or the team Kennedy plaintiffs, I suppose, could have amended their federal complaint much earlier than they did to bring these claims as to the New York residency statute. They amended their complaint, I believe the date was August 22nd. This proceeding was filed back in June, challenging several other provisions of the New York ballot access requirements for independent presidential candidates. But back in June is when this issue first surfaced, when all parties were aware of it at that point. The challenge was filed in state court, and if these plaintiffs wanted to obtain a federal ruling, given the kind of time constraints, et cetera, they should have acted at that point. The plaintiffs who weren't party to that proceeding, or the plaintiffs who were not yet party to this proceeding, could have intervened then, could have launched their own complaint to challenge it. If we said today, put Kennedy back on the ballot, are you saying that there's no way practically that could be done? I can't say there's no way practically that can be done. Because I'm trying to understand the technology. I encountered this problem as a district judge in 2000, and the problem then was we had those great old machines with the big red lever, and they were already on the road to the polling places when the challenge hit the district court. And that seemed like there was just really nothing much that could be done about that. Fortunately, it was – the challenge was not about the identity of people on the ballots. There were other workarounds, but we're at a different age now where most of this stuff is relatively electronic, I assume. So if – I'm not sure what it would take for the Board of Elections to just press a few keys, change the template, and then resend ballots if some had already been sent. But it's not clear. I mean, I guess the problem is it's all done on a county basis. There are 63, I believe, boards of elections that would need to act, and all of them are at different stages of the process. The State Board of Elections, my clients in this proceeding, have a window, a system-based window into – they can see where electronic ballots have been mailed. Overseas voters can request to receive their ballots electronically and print them out, fill them out, and send them back in. So they can see what counties have sent electronic ballots already. At this point, several already have. The other counties, in terms of the mailing ballots, we don't know where everybody is. There may be some counties at this stage of the process, the smaller counties, that have begun that and moved on to other things. But the deadline for doing that is the 20th, and we're three days away from that. So at minimum, we are right now in the process of printing and testing ballots that needs to happen. The Stavisky Declaration, Exhibit E to the Jaffe Declaration. Okay, I think I get the broad picture of the facts. And what is the consequence of that in your argument? In other words, suppose it were the case that we decide this is just flatly unconstitutional, totally outrageous, he should be put back on the ballot, period, end of story. But sorry too bad it's too late. Is that the position? Well, I mean that's – our position is that it speaks to the equities involved here. Given the kind of delay in raising these issues, that speaks to both a lack of irreparable harm, also given the fact that these issues have been litigated in the state court. And I know there are arguments about some of the plaintiffs here aren't in privity with the candidate there. But these plaintiffs knew about this issue. They could have done something sooner than they did, and they didn't. And so this is sort of a – this case is – It's part of the balancing that goes into the equitable relief is the point. That's right, Your Honor. But also there is a public interest involved as well. And so what this would entail, the disruption that would entail from this, let's say the state board has to now go to the counties in the event this court were to order relief and tell them to kind of press stop on everything and we've got to start over and this is what the new ballot has to be. I get it. The last, very last question on this is so when did the disruption of taking him off the ballot happen? What is the effective date at which it was decided that he should be off the ballot? How much notice was there of that? That took place before ballots were certified. And so, you know, the ballot certification deadline was September 11th in this cycle. I don't remember what the exact date of the court's orders in the Cartwright case. Well, I mean, it must have been – something was going on back in June, I guess, if you're saying that they should have raised this challenge back in June. But why would they raise this challenge until and unless someone decided that this was a problem for Mr. Kennedy? And when did that happen? Who took him off the ballot that led to all this litigation over this particular issue? If by who took him off the ballot, you mean the individuals who challenged his petition? No, who made the decision that those individuals who challenged the petitions were correct? These were the state courts that adjudicated the Cartwright proceeding. And the Dutchess County Court acted August 13th, right? You're all right. I confess I don't know the dates. But the petitions were filed May 31st and June 10th. That sounds right. Okay. So there's delay on that side of the case as well, right? He filed these petitions way back then, and suddenly in the middle of August a case gets decided. And I don't know when that case started, but this is happening at the last minute regardless. And, again, if we're talking about the equities in the case, if the state could, by slow-walking decisions on this thing, put us in a position where they have to litigate in two different court systems over a period of weeks on an emergency basis, maybe that goes to the equities too. Well, I think the procedural history of the Cartwright case is on June 10th, I believe, is when the lawsuit was filed. And so a full trial on the merits of the issue had taken place by the first part of August. And so I don't think it's fair to say that. The court was acting expeditiously and got this decision, and now we're in the last-minute phases of challenges. I understand the situation. That's correct, Your Honor. Appreciate it. Thank you both. We'll take it under advisement. Obviously, that went very quickly. Thank you.